UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

WILLIAM W. and LAVERNE W., )
Individually, and as Next Friends of )
Lindsey W., a minor, )
)
        Plaintiffs, )
)
v. )   Case No. 05-4082
)
BOARD OF EDUCATION OF MOLINE )
SCHOOL DISTRICT NO. 40, )
)
        Defendant. )

## O R D E R

This matter is now before the Court on Cross Motions for Summary Judgment by Plaintiff and Defendant. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment [#10] is DENIED, and Defendant's Motion for Summary Judgment [#12] is GRANTED.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claim asserted in the Complaint presents a federal question involving rights created by the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq*.

### FACTUAL BACKGROUND

Lindsey W. is a 12-year-old girl in seventh grade at John Deere Middle School ("JDMS") in Moline, Illinois. Lindsey has asthma, GERDS, migraines, rhinitis, and lactose intolerance. As a result of these impairments, Lindsey is a student with a specific "Learning Disability and Other Health Impairment" and is therefore eligible for special education services. William W. and LaVerne W. are her parents.

On September 2, 2004, the School District requested a due process hearing, asking the Independent Hearing Officer ("IHO") to order Lindsey to submit to a medical examination by an unnamed physician. The School District then filed a Motion for Summary Disposition and requested that the IHO order Lindsey to be evaluated by the physician of the District's choice. The IHO denied the District's Motion for Summary Disposition, ruling that there was no evidence that the District ever presented to the parent a consent for evaluation that met the requirements of § 300.500 of the Code of Federal Regulations. Plaintiffs then filed a Motion to Dismiss the District's request for a hearing, and the District voluntarily withdrew its request on December 21, 2004. Lindsey's parents agreed to a review of records, and Lindsey did not undergo the medical examination sought by the District.

On October 27, 2004, while the District's request for a hearing was still pending, Plaintiffs requested a due process hearing regarding Lindsey's special education. In their request, the Plaintiffs alleged that the District had failed to identify her as eligible to receive services in speech-language and therefore failed to adequately address her language needs. On April 22, 2005, Plaintiffs and their attorney met with representatives and legal counsel from the District for an IEP meeting to review the evaluation tendered by Plaintiffs in support of their request. The District rewrote the language arts and math goals to allow for the measurement of her performance over the course of the school year and agreed to provide Lindsey with 60 minutes of direct speech therapy and 20 minutes of consultative services per week. The IHO found that the District had relied on the evaluation submitted by Plaintiffs and directed the District to reimburse Plaintiffs for the cost of the evaluation. The IHO also ordered that the IEP written on April 22, 2005, be implemented as Lindsey's

eighth grade IEP. Plaintiffs contend that the District attempted to avoid the IHO's order by removing her from special education math and failing to have speech-language services available for Lindsey when school began in the fall.

On October 15, 2005, Plaintiffs brought this action seeking recovery of the attorney's fees that they expended during the underlying proceedings pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Both parties have now filed cross motions for summary judgment which are fully briefed. This Order follows.

**LEGAL STANDARD**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce

evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

## DISCUSSION

The IDEA requires states that accept federal funding for the education of disabled children to provide these children with a "free appropriate public education." 20 U.S.C. § 1415. Illinois accepts federal funding for this purpose. Casey K. ex rel. Norman K. v. St. Anne Community High School Dist., 400 F.3d 508, 509 (7th Cir. 2005). Under the IDEA, schools are required to have procedures in place that allow parents to make complaints regarding the identification, evaluation, placement, or provision of services to their child, and each student must be offered special education and related services under an Individualized Education Plan ("IEP"). Evanston Community Consolidated School Dist. No. 65 v. Michael M., 356 F.3d 798, 802 (7th 2004).

If the parents' concerns are not resolved to their satisfaction through informal mechanisms, the IDEA provides a right to mediation or an impartial due process hearing. T.D. v. LaGrange School District, 349 F.3d 469, 471 (7th Cir. 2003). If the dispute remains unresolved after the due process hearing, the parents may bring a civil action. Id.; 20 U.S.C. § 1415(i)(2)(A). "To ease the financial burden on parents making claims, the IDEA contains a fee-shifting provision." LaGrange School District, 349 F.3d at 471.

The fee-shifting provision of the IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. §1415(i)(3)(B).  This provision allows an award of reasonable attorneys' fees to the party who has prevailed in the administrative proceedings.  Linda T. V. Rice Lake Area School District, 417 F.3d 704, 707 (7th Cir. 2005).

> A party "prevails" for purposes of federal fee-shifting statutes when he or she obtains "actual relief on the merits" of a claim that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.  However . . . "[i]n some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all.  The prevailing party inquiry "does not turn on the magnitude of relief obtained," but the size of the fee award does.  The Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."  Therefore, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all."  The reasonable fee award for a prevailing plaintiff who obtains only a "Pyrrhic victory" is zero.

Linda T., 417 F.3d at 707-08.  In other words, to be deemed a prevailing party, Plaintiffs must at least "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." LaGrange School District, 349 F.3d at 479.

Here, the Court must examine the degree of Plaintiff's success at two different points in time.  First, on September 2, 2004, the District requested a due process hearing with the goal of compelling Lindsey to undergo a medical re-examination by an unnamed physician to determine the impact of her asthma on her education.  The IHO ruled that while there were references to a request by the District for an update of Lindsey's health information by the school social worker and nurse, there was no evidence that the District had met its

- 5 -

obligation by presenting Plaintiffs with a legally sufficient consent for evaluation to determine the educational impact of her asthma. The IHO noted that it was clear that the District had attempted to work with Plaintiffs to find an appropriate physician to complete the evaluation but that the Plaintiffs were erroneously attempting to assert some sort of veto power over the physician of the District's choosing. The IHO further found that "[i]t is clear to this hearing officer that no consent will be forthcoming from the parents and consequently there will be a hearing on the school district's request for an Order that the parents present the student for an evaluation by a physician selected by the school district." The District apparently conceded that its hearing request was premature and subsequently withdrew its request.

With respect to this portion of the inquiry, the Court cannot find that Plaintiffs are a "prevailing party" within the context of the precedent in this circuit. While they may have technically "won" in the sense that the District withdrew its request, there was no material alteration in the legal relationship between the parties that modified the District's behavior in a way that directly benefitted the Plaintiffs. The District was not denied its request for an independent examination on the merits. To the contrary, the IHO recognized the District's right to obtain such an examination and merely held that there was a procedural prerequisite to the examination being ordered. The withdrawal only maintained the status quo prior to the satisfaction of that procedural prerequisite and served to delay the examination when even the IHO noted that "[c]ommon sense dictates that such evaluation be made and that the IEP team consider the evaluations findings." Moreover, it would seem that the result did not "benefit" the Plaintiffs in the context of the precedent, as the evaluation would have been a necessary part of obtaining the special treatment and

services that Plaintiffs were seeking for their daughter. Accordingly, to the extent that Plaintiffs can be said to have prevailed, it was nothing more than the type of "Pyrrhic victory" that does not merit a fee award.

The next point in time occurred after Plaintiffs requested a due process hearing on October 27, 2004, alleging that the District: (1) failed to provide Lindsey with a free appropriate public education; (2) failed to identify her as learning disabled or eligible for services under speech-language; (3) failed to provide her an appropriate IEP that includes present levels of performance and measurable goals; (4) failed to address all of her learning needs, particularly in the area of listening comprehension; (5) failed to provide extended school year services and appropriate accommodations for her asthma; (6) failed to provide consistent assistive technology services; and (7) delayed implementing IEP services. Plaintiffs sought an appropriate IEP, appropriate services and accommodations, and that Lindsey be made eligible for services under the category of "learning disability."

In support of their hearing request, Plaintiffs submitted the independent evaluation of Dr. Janet Marsden-Johnson, who concluded that Lindsey had significant processing and organizational difficulties, as well as an undeveloped higher level language structure. Dr. Marsden-Johnson found that appropriate and intensive intervention in the form of direct speech and language services were indicated and that assistive technology was highly recommended. With respect to Lindsey's assistive technology needs, Plaintiffs procured an evaluation by Bridgette Nicholson. Ms. Nicholson recommended that Lindsey use various assistive technologies and a specific speech recognition software, document scanning software, hardware and software for voice recording, mind mapping and brainstorming software, digital and audio books, and suggested changing the color of the

computer display before concluding that Lindsey must have the specified assistive technology. Plaintiffs also relied on a neuropsychological report by Dr. Michelle Rosen indicating that Lindsey had a severe processing deficit and that the goals in the existing IEP did not adequately address her learning needs or sufficiently address performance goals and measurement.

At some point, Plaintiffs and the District finally agreed upon an independent examination by Dr. Steven Boas with respect to the impact of Lindsey's asthma. Dr. Boas concluded that her asthma was under appropriate medical care with appropriate medications and that the accommodations which were added to her IEP in August 2004 were also appropriate.

The discussions then proceeded to an IEP meeting on April 22, 2005. During this meeting, the independent evaluations were reviewed. Lindsey's language arts and math goals were written to continue receiving services in those areas in the Basic English, Basic Math and Basic Study Skills special education classes in 8th grade and were also written to specifically provide for the procurement of baseline data against which to measure her performance over the course of the school year. The IEP contained a list of supplementary aides, services, and program modifications, many of which appeared in earlier IEPs. The IEP team noted that Lindsey required the use of an assistive technology device but found that extended school year services were not necessary. The meeting was adjourned to allow counsel to discuss the issue of speech/language consultative minutes and assistive technology services.

On May 19, 2005, a draft IEP was forwarded to Plaintiffs recommending 60 minutes per week of direct speech/language services and an additional 20 minutes per week of

consultative services. The District also indicated that it wanted to conduct its own assistive technology evaluation.

The due process hearing commenced on May 31, 2005, and ended on June 15, 2005. Lindsey's father testified that he had paid $3,275 for the independent neuropsychological evaluation of Dr. Rosen, $1,650 for the assistive technology evaluation of Bridgette Nicholson, and $600 for the speech/language evaluation of Dr. Marsden-Johnson.

The IHO concluded that Plaintiffs had been allowed meaningful participation in the IEP process but simply did not agree with the IEP that was ultimately developed. The IHO determined that several of Plaintiffs allegations were not well-founded, including a claim that Lindsey's Seventh Grade IEP had been handed to her mother on a clipboard in an incomplete form and the assertion that they did not receive progress reports as frequently as regular education students receive their report cards.

The IHO determined from the record that Lindsey had "received educational benefit in every single grade completed by her" and that Plaintiffs' evaluators based their decisions on "their conclusions that the student's deficits were severe, had been ignored for years, and required intense intervention." (Decision and Order at 29) She noted that Dr. Rosen made "insulting" conclusions and assumptions about what happened in Lindsey's classrooms without ever consulting with her teachers, while the testimony of the teachers who had actually worked with Lindsey over the years was credible, persuasive, and compelled the conclusion "that the school district had adequately assessed the student and had created an IEP for the 5th, 6th, and 7th grade which was calculated to and in fact did confer educational benefit upon the student." Id. Ms. Nicholson's testimony was found to

"illustrate a common problem with the parent's evaluators – she testified that if the school district followed all of her recommendations (all of which she insisted the student required), the school district would provide maximum benefit to the student" which is not the applicable standard for special education. Testimony from the educational professionals who had worked with Lindsey was credited as demonstrating that her assistive technology needs were appropriately addressed in her 5th, 6th, 7th, and 8th grade IEPs.

In response to Plaintiffs argument that the IEPs did not address all areas of Lindsey's deficiencies, the IHO found unrebutted testimony that there was no evidence that she had any speech/language impairment during the 5th, 6th, and 7th grade and concluded that the evaluation and testimony of Dr. Marsden-Johnson was not persuasive. Id. at 30. Nevertheless, the District agreed to insert speech goals into her 8th grade IEP "in a spirit of compromise in an attempt to avoid a due process hearing." Id. The IHO concluded that "it becomes clear that the teaching professionals knew this student, understood her areas of strength and weakness, and complied with the IEP." Id. at 31.

With respect to the draft IEP prepared following the April 2005 meeting, the IHO noted that the record established that at the end of that meeting, the IEP "did not contain the speech goals which the school district intended to be implemented in 8th grade and that the asthma modifications contained in the August 26, 2004 [sic] were not re-inserted." Id. at 32. However, she also found no dispute that the speech/language services and asthma modifications were intended by all parties. While not technically contained in the IEP itself, the speech goals were reflected in an April 29, 2005, letter from counsel for the District, and the IHO found it clear that the draft IEP must be read in conjunction with the April 29, 2005,

letter and asthma accommodations in the August 2004 IEP to get the full picture of what the District was comitting to provide for Lindsey.

The IHO declined to reimburse Plaintiffs for the evaluation of Dr. Rosen because there was no evidence that the previous psychological examinations conduct by the District were inappropriate. As the District had appropriately responded to Lindsey's assistive technology needs, she also denied reimbursement for the evaluation by Ms. Nicholson. The IHO indicated that it did not follow from the fact that speech goals were inserted into Lindsey's 8th grade IEP that she actually required such services during that time period. However, while the IHO concluded that the District had appropriately responded to Lindsey's speech/language needs in the past and developed goals to address her needs in the 8th grade, she noted that the goals could be traced directly to Dr. Marsden-Johnson's report. Because the District clearly relied on Dr. Marsden-Johnson's recommendations even if only in the spirit of compromise, and it appeared that absent her report, there would have been no speech goals in the 8th grade IEP, the IHO found that the District was required to reimburse Plaintiffs for the cost of Dr. Marsden-Johnson's evaluation.

Plaintiffs had requested that Lindsey receive extended school year services, yet the IHO observed that none of Plaintiffs' evaluators had even considered this issue. On the other hand, the District's witnesses testified that there was no evidence that Lindsey regressed more than any average student after a vacation or break. Accordingly, Plaintiffs' request for extended school year services was denied.

In response to Plaintiffs' claim that Lindsey should be eligible for services as a student with a speech-language deficit, the IHO determined that there was no data supporting her eligibility for such services during the 5th, 6th, or 7th grade, or evidence of an

adverse impact on her education in the absence of such services.  Dr. Marsen-Johnson's testimony that Lindsey had a severe speech-language deficit was found to be not persuasive when compared with the testimony of the classroom teachers and school speech pathologist.  The IHO also concluded that the record established that the asthma accommodations as contained in the August 2004 IEP were appropriate.

The IHO ultimately ordered that the IEP for Lindsey's 8th grade year be finalized by inserting the speech goals as set forth in the May 19, 2005, letter, as well as the asthma modifications contained in the August 2004 IEP, and that they be reimbursed for the cost of Dr. Marsden-Johnson's speech/language evaluation in the amount of $600.00.  All other relief sought by the Plaintiffs was denied.

While Plaintiffs tout this ruling as evidence that they prevailed on significant claims in the due process hearing, the Court disagrees.  The "finalization of the IEP" appears to amount to nothing more than the IHO directing the District to consolidate the various segments of what everyone agrees that the District had already offered as the plan for Lindsey's services so that the plan would be reflected in one integrated document.  This reflects the correction of an administrative oversight and simply does not evidence the resounding victory that Plaintiffs portray it to have been.  Rather than striking down the District's proposed IEP and adopting the version advocated by the Plaintiffs, the IHO essentially implemented the very proposal that the Plaintiffs had rejected.

The IHO found that once the speech and asthma provisions that had been proposed by the District were integrated into the text of the IEP, the District was offering Lindsey a free appropriate public education.  Plaintiffs' request for an assistive technology evaluation was denied, as was their request that a particular assistive technology device be purchased

by the District specifically for Lindsey's exclusive use. Plaintiffs' demand for speech/language services was found to have been voluntarily accommodated by the District, and their neuropsychological evaluation was substantially found to be non-credible and unwarranted. The Supreme Court has held that relief obtained through agreement with the school district that has not been awarded by virtue of some sort of "judicial imprimatur" does not confer prevailing party status upon the parents. LaGrange School District, 349 F.3d at 474, *citing* Buckhannon Bd. & Care Home v. West Virginia Department of Health and Human Res., 532 U.S. 598, 605, 121 S.Ct. 1835 (2001).

Plaintiffs also suggest that they obtained significant relief because they protected Lindsey's services against change by the District in that the goals and services stated in the April 22, 2005, IEP were ordered to be implemented. With all due respect, this argument borders on frivolous. The goals and services stated in the April 22, 2005, IEP were the benefits that had been offered by the District prior to the due process hearing. By having these same services implemented, Plaintiffs essentially obtained nothing more than what was being offered by the District and what was rejected by Plaintiffs in pursuing the due process hearing.

Plaintiffs' one small "victory" in the ordered reimbursement for Dr. Marsden-Johnson's evaluation is also unavailing. In Arlington Central School Dist. Board of Ed. v. Murphy, ___ U.S. ___, 126 S.Ct. 2455, 2461 (2006), the Supreme Court subsequently clarified that the IDEA does not authorize awards of expert fees to parents. Accordingly, the award of reimbursement for Dr. Marsden-Johnson's expert evaluation is contrary to law and cannot be used as basis to support an award of attorney's fees.

It is apparent that Plaintiffs are devoted to Lindsey, have become very involved in her education, and want the best possible opportunities for her.  In the Court's experience, such dedication and involvement is characteristic of this type of case, as loving parents often become aggressive advocates for their special needs child.  That being said, such advocacy can sometimes cause parents to view inaccurately what actually happened, which is what the Court believes occurred in this case.  After painstakingly combing through the administrative record to determine the facts of the underlying proceedings, it is apparent to the Court that much of what Plaintiffs are claiming to have "won" in the due process hearing was actually provided voluntarily by the District during the IEP process.  Plaintiffs rejected this service plan and sought to compel the District to provide many additional services as suggested by their independent evaluators.  As is evident in the IHO's Decision and Order, Plaintiffs' efforts were not successful and what was ordered was essentially what had been offered by the District during the IEP process.

The only deviation from the District's proposal that was obtained by the parents (e.g., reimbursement for one evaluator's report) was purely technical in that it was contrary to law and had nothing to do with the merits of their position.  As such, no reasonable jury could conclude that Plaintiffs obtained actual relief on the merits, forced a modification of the District's behavior in a way that benefitted Lindsey, or prevailed on any significant issue in the litigation on the record before the Court.  The Court therefore finds that Plaintiffs cannot be deemed "prevailing parties" on any reasonable construction of the undisputed facts in this case, and the District is entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [#10] is DENIED, and the District's Motion for Summary Judgment [#12] is GRANTED. This matter is now TERMINATED, and all existing deadlines are VACATED.

ENTERED this 18th day of January, 2007.

                                          s/ Michael M. Mihm
                                          Michael M. Mihm
                                      United States District Judge